IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA ANN MARIE MILLER, | ) | Case No. 3:21-cv-111 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff Sheila Ann Marie Miller ("Miller") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

I.   **Procedural History**

On February 22, 2019, Miller protectively filed a Title II application for a period of disability and DIB. (Tr. 340). Miller also protectively filed a Title XVI application for SSI on February 22, 2019. (*Id.*). Miller alleged disability beginning on May 15, 2014, in both applications. (*Id.*). Both claims were initially denied on September 10, 2019, and upon reconsideration on January 29, 2020. (*Id.*). Miller then filed a written request for a hearing on February 20, 2020. (*Id.*). A hearing was held before Administrative Law Judge ("ALJ") John A. Fraser on August 20, 2020. (*Id.*). This hearing was held over telephone due to the Coronavirus Disease 2019 ("COVID-19") Pandemic, an arrangement to which Miller consented. (*Id.*) At the hearing and upon advice of

counsel, Miller amended her alleged onset date to January 31, 2019. (*Id.*). The ALJ issued a decision on October 1, 2020. (Tr. 337–60). Thereafter, Miller requested review of the unfavorable decision by the Appeals Council. (Tr. 8–9). The Appeals Council denied Miller's request on May 6, 2021. (Tr. 1–7). Miller has now appealed to this Court, where the parties' motions for summary judgment are pending. (ECF Nos. 14, 21).

II. **Issue Presented**

Miller presents the following issue for review:

1. Whether the ALJ's formulation of Miller's residual functional capacity ("RFC") is not supported by substantial evidence because it fails to properly evaluate the mental impairment evidence generally, and the assessment of the Agency's examining consultative psychologist, Dr. Kennedy. (ECF No. 15 at 1, 6).

III. **Discussion**

a. **Standard of Review**

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 77 F.3d 607, 610 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s]

the record as a whole to determine whether substantial evidence supports a factual finding." *Id.* (quoting *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the [Administrative Law Judge's] ("ALJ's") application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

### b. Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4). "First, the Commissioner considers whether the claimant is 'engaging in substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled and the analysis ends at the first step. *Id.* "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* (quoting C.F.R. § 404.1520(a)(4)(ii)). If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the claimant is not disabled[,]" and the analysis ends. *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If at step three "the claimant's impairment(s) meet [or exceed] the requirements of a listed impairment, then the claimant is disabled[,]" and the analysis may end. *Id.*

If the claimant's impairments do not meet or exceed a listed impairment, "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to her past work." *Id.* In determining whether the claimant can perform past relevant work, the

claimant's RFC is assessed. *Id.* "A claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)). (alterations in original). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Id.* (quoting 20 C.F.R. § 404.1545(a)(3)). If the claimant can perform past relevant work, then the claimant is found not to be disabled. *Id.* The claimant bears the burden of satisfying the first four steps by a preponderance of the evidence. *Id.*

At step five, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citing 20 C.F.R. § 404.1520(a)(4)(v)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). To meet this burden, "the Commissioner must produce evidence that establishes that 'work exists in significant numbers in the national economy that [the claimant] can do.'" *Zirnsak*, 777 F.3d at 612 (quoting 20 C.F.R. § 404.1560). The Commissioner uses the RFC, as well as the testimony of vocational experts and specialists, to establish that work exists in significant numbers in the national economy that the claimant can perform. *Id.* "[E]ntitlement to benefits is dependent upon the finding [that] the claimant is incapable of performing work in the national economy." *Id.* (internal quotation marks omitted).

   c. **The ALJ's Evaluation of Miller**

At step one, the ALJ found that Miller did not engage in any substantial gainful activity since January 31, 2019. (Tr. 342). At step two, the ALJ found that Miller had the following severe impairments: "fibromyalgia; anxiety; depression; degenerative disc disease; obesity; panic disorder; and adjustment disorder." (Tr. 343). At step three, the ALJ found that Miller "does not have an impairment or combination of impairments that meets or medically equals the severity

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). At step four, the ALJ determined that Miller "is unable to perform any past relevant work." (Tr. 352). The ALJ also found that Miller has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able occasionally to climb ladders and scaffolds and to balance, stoop, kneel, and crawl; is able frequently to climb ramps and stairs and to crouch; is able to tolerate occasional exposure to vibrations and extreme cold, unprotected heights and moving machinery; and is able to understand, remember, and carry out simple instructions.

(Tr. 345).

Finally, at step five, the ALJ determined that, "[c]onsidering [Miller's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Miller] can perform." (Tr. 352). Accordingly, the ALJ found that Miller has not been under a disability from her amended onset date of January 31, 2019, through the date of the ALJ's decision. (Tr. 353).

### d. Analysis

#### 1. The Parties' Arguments

Miller argues that the ALJ failed to properly evaluate the medical opinion of the Agency's psychological consultative examiner as required by Social Security Administration ("SSA") regulations. (ECF No. 15 at 1). As a result of this error, Miller argues that the ALJ's RFC finding is contrary to law and is not supported by substantial evidence, warranting remand for further consideration. (*Id.*).

More specifically, Miller argues that the ALJ erroneously failed to include any social limitations in the RFC, including the marked social limitations offered by the Agency's

psychological consultative examiner, Charles Kennedy, Ph.D. ("Dr. Kennedy"). (ECF No. 15 at 3). Miller also contends that the ALJ failed to properly evaluate Dr. Kennedy's opinion in concluding that it was unpersuasive. (*Id.* at 8).

Moreover, Miller argues that because the ALJ's analysis resulted in a defective RFC, any vocational testimony premised upon that RFC cannot be substantial evidence supporting the ALJ's decision. (*Id.*). Because this Court is not permitted to reweigh the evidence and cannot substitute its own independent analysis of the evidence, Miller argues that this Court should remand for further proceedings. (*Id.* at 10).

In response, the Commissioner contends that substantial evidence supports the ALJ's evaluation under new medical evidence regulations. (ECF No. 22 at 12). Specifically, the Commissioner argues that the ALJ permissibly found Dr. Kennedy's opinion to be not persuasive by applying the new regulations and considering the most pertinent factors of supportability and consistency. (*Id.* at 13). Therefore, the Commissioner argues that this Court should affirm the Commissioner's decision. (ECF No. 22).

Because Miller's arguments revolve around the ALJ's assessment of Miller's mental limitations, the ALJ's evaluation of Dr. Kennedy's opinion, and the ALJ's ultimate RFC determination, a summary of the ALJ's analyses on these points is warranted.

2. **The ALJ's Findings Relevant to Miller's Mental Impairments and RFC**

In addressing the severity of Miller's mental impairments, the ALJ noted at step three of the evaluation process that Miller has a mild limitation in the following areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) adapting and managing oneself. (Tr. 344). For the area of functioning regarding "concentrating,

persisting, or maintaining pace," the ALJ found that Miller has a moderate limitation. (*Id.*). The ALJ noted that Miller reported that her impairments affect her concentration but not her ability to complete tasks, and "she finishes what she starts." (*Id.*). And the ALJ concluded that the objective findings do not reflect any consistent deficits with regard to attention, concentration, or thought process. (*Id.*).

While the ALJ did note that Miller reported difficulty in being around people due to anxiety, Miller did not report that this anxiety had any effect on her ability to get along with others, including authority figures. (*Id.*). Additionally, the ALJ observed that the objective findings did not show any lasting deficits with regard to relating, cooperation, eye contact, behavior, speech, language, or thought content. (*Id.*). The ALJ also considered that Miller did not report any specific lasting social interaction issues in the course of seeking treatment, and he stressed the facts that she is able to (1) shop in stores, (2) visit with family, and (3) use a cell phone for social media. (*Id.*). Accordingly, the ALJ concluded that "the objective findings show no lasting or significant objective mental deficits." (*Id.* at 349).

Turning to the ALJ's mental RFC determination,[1] the ALJ noted that he considered the prior administrative medical finding of the State agency psychological consultant who reviewed the record initially and concluded that Miller was able to perform one and two-step tasks and carry out simple instructions. (Tr. 351). The ALJ also explained that he considered the prior administrative medical finding of the State agency psychological consultant who reviewed the record on reconsideration. (*Id.*). That psychological consultant concluded that Miller is capable of

---

[1] As Miller herself posits, "[t]he RFC also includes physical limitations[,] but the ALJ's *physical* RFC finding is not at issue." (ECF No. 15 at 2) (emphasis in original).

performing tasks within a schedule and at a consistent pace, she can make simple decisions, and she "has no limitations on understanding and memory, social interaction, or adaptation." (*Id.*).

The ALJ deemed the latter finding from the consultant who reviewed Miller's record on reconsideration more persuasive "as it is more consistent with the overall objective findings showing no consistent deficits of eye contact, speech, behavior, thought content, or other deficits relating to social interaction or adaptation." (*Id.*). The ALJ further explained that that finding was more consistent with Miller's treatment history, which included "outpatient treatment for generalized symptoms of anxiety and depression but no lasting, specific social issues and no emergency or inpatient mental treatment." (*Id.*). Finally, the ALJ noted that the finding on reconsideration was "more consistent with [Miller's] activities of daily living," which included living alone in an apartment, caring for her own personal needs, driving, shopping in stores, and paying bills. (Tr. 349, 351).

Next, the ALJ considered the medical opinion of Dr. Orr, who concluded that Miller had "poor or no limitation in various areas of functioning."[2] (Tr. 351). The ALJ found Dr. Orr's opinion "not persuasive" because it was "not supported by a substantial explanation of the treatment notes from the facility where the claimant receives medication management." (*Id.*). The ALJ also explained that Dr. Orr's opinion was not consistent with the objective findings of the consultative examiner or with Miller's treatment history. (*Id.*)

---

[2] The Court notes that it understands the ALJ's reference to "poor or no limitation" to mean that Dr. Orr concluded that Miller was at least somewhat limited in certain areas of functioning, contrary to the consultative medical examiner's conclusion that Miller had "no limitations on understanding and memory, social interaction, or adaptation." (Tr. 351).

Finally, and particularly relevant to Miller's argument, the ALJ considered the medical opinion of Dr. Kennedy. As the ALJ explained:

> The undersigned has considered the medical opinion of psychological consultative examiner Dr. Kennedy including that the claimant's ability to understand, remember, and carry out instructions is not affected by her impairments but that she has a marked limitation in her ability to interact appropriately with the public, supervisors, and coworkers and respond appropriately to usual work situations and to changes in a routine work setting (Ex. C11F). The undersigned finds this medical opinion not persuasive as it is not supported by any explanation other than a reference to "panic disorder" and is not supported by Dr. Kennedy's own examination of the claimant showing no deficits of relating, social skills, eye contact, or behavior. It is also not consistent with the claimant's history of anxiety and depression result it [sic] at least some degree of limitation on her ability to understand, remember, and carry out instructions but no lasting reports of social or adaptation issues or objective findings showing deficits in those regards. Further it is not supported by the claimant's activities of daily living, as discussed in detail above.

(Tr. 350–51).

Accordingly, the ALJ concluded that Miller had the RFC to perform light work but is limited to "understand[ing], remember[ing] and carry[ing] out simple instructions." (*Id.* at 345).

### 3. After Careful Review of the Record, the Court Finds that Substantial Evidence Supports the ALJ's Conclusions

Miller launches three arguments to support her contention that the ALJ's conclusions were not supported by substantial evidence: (1) the ALJ improperly found Dr. Kennedy's opinion unpersuasive, (2) the ALJ failed to properly evaluate the mental impairment evidence generally, and (3) the ALJ's overarching conclusion that Miller was not disabled was improper.

#### i. The ALJ's Finding that Dr. Kennedy's Opinion Was Unpersuasive Is Supported by Substantial Evidence

Miller's general assertion is that by failing to include any social limitations in Miller's RFC, the ALJ erroneously disregarded Dr. Kennedy's opinion, which indicated that Miller suffered

from marked social limitations. (ECF No. 15 at 3). But "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

As the Third Circuit has explained, "[i]n determining a claimant's RFC, an ALJ must consider all relevant evidence, including medical opinions, statements from medical sources, and a claimant's subjective complaints." *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). While the ALJ considers evidence that includes medical opinions and any prior administrative medical findings, the RFC assessment is an administrative finding made by the ALJ and not a medical opinion. *See Tedesco v. Comm'r of Soc. Sec.*, 833 F. App'x 957, 960 (3d Cir. 2020) ("'The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and residual functional capacity determinations.'") (quoting *Chandler*, 667 F.3d at 361). Therefore, an ALJ's RFC determination "must be 'accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Melchionna v. Comm'r of Soc. Sec.*, No. 21-1860, 2022 WL 822127, at *4 (3d Cir. Mar. 17, 2022) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Regarding the alleged social limitations upon which Miller's arguments rely, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (citation omitted).

Moreover, for claims filed on or after March 27, 2017, such as Miller's, ALJs are not to "defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "The factors of supportability and consistency are the most important factors [an ALJ will] consider when [they] determine how persuasive [they] find a medical source's medical opinion or prior administrative medical finding to be." 20 C.F.R. § 404.1520c(b)(2). And "the ALJ must 'give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Melchionna*, 2022 WL 822127 at *4 (quoting *Cotter*, 642 F.2d at 705).

Here, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence[,]" along with "the medical opinion(s) and prior administrative medical finding(s)[.]" (Tr. 345; *see also* Tr. 348–51). This included the ALJ's consideration of Miller's medical treatments, medication use, and testimonial evidence, including Miller's testimony regarding her alleged symptoms and activities of daily living. (Tr. 348–52).

And in doing so, the ALJ adhered to 20 C.F.R. § 404.1520c(a) by determining the persuasiveness of those medical opinions and administrative medical findings through the lens of supportability and consistency. As previously noted, the ALJ found the prior administrative medical finding on reconsideration to be persuasive because it was "more *consistent*" with the objective medical evidence, Miller's treatment history, and her activities of daily living. (Tr. 351) (emphasis added). Moreover, the ALJ rejected the medical opinion of Dr. Orr—who found that Miller had poor or no limitation in various areas of functioning—because it was "not *supported*

by a substantial explanation or the treatment notes[.]" (*Id.*) (emphasis added). And, as shown above, the ALJ undertook a similar analysis in finding Dr. Kennedy's opinion unpersuasive. (*Id.*).

Nonetheless, Miller contends that "the record patently supports and is consistent with the opinion of Dr. Kennedy, and thus the ALJ erred in not providing legally sufficient 'good reasons' for finding that his opinion was not persuasive at the first step of the § 404.1520c analysis." (ECF No. 15 at 10). Miller's first contention that the record supports Dr. Kennedy's opinion appears to be a request that the Court reweigh the evidence. *See Stoltz v. Kijakazi*, No. 21-1585, 2022 WL 541771, at *11–12 (E.D. Pa. Feb. 23, 2023) (categorizing a claimant's argument that evidence in the record supported a medical opinion that the ALJ found unpersuasive as an improper request to reweigh the evidence). Because the Court is "not permitted to reweigh the evidence or impose [its] own factual determinations" under substantial evidence review, Miller's argument on this score carries little weight.

Further, the Court disagrees with Miller's second contention that the ALJ failed to provide sufficient "good reasons" for finding Dr. Kennedy's opinion unpersuasive. The ALJ explained that Dr. Kennedy's opinion was "not supported by any explanation other than a reference to 'panic disorder' and [was] not supported by Dr. Kennedy's own examination of the claimant showing no deficits of relating, social skills, eye contact, or behavior."[3] (Tr. 351). The ALJ went on to explain that Dr. Kennedy's opinion was also inconsistent with Miller's treatment history, the objective medical findings, and Miller's activities of daily living. (*Id.*). Again, this analysis squarely comports with 20 C.F.R. § 404.1520c(a)'s mandate that the ALJ evaluate the

---

[3] The Court notes that, contrary to Miller's assertion, (ECF No. 15 at 8), Dr. Kennedy's opinion did, in fact, state that "Miller was pleasant and cooperative. Her manner of relating, social skills, and overall presentation were adequate[,]" and her "[e]ye contact was good." (Tr. 847–48).

persuasiveness of medical opinions by probing their supportability and consistency. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be.").

In a similar vein, Miller also argues that the "ALJ's reasons for overreaching to find Dr. Kennedy's opinion unpersuasive are not logically bridged to the evidence, and [are] therefore not supported by substantial evidence." (ECF No. 15 at 10). The Court again disagrees. The ALJ specifically noted the inconsistencies between Dr. Kennedy's opinion and the other evidence contained in the record—namely, Miller's activities of daily living and the fact that her history of anxiety and depression did not contain "lasting reports of social or adaptation issues or objective findings showing deficits in those regards." (Tr. 351–52). That analysis is logically tethered to record evidence.

The Court also notes that the State agency psychological consultant's opinion that the ALJ found persuasive in forming Miller's mental RFC explicitly considered Dr. Kennedy's examination and subsequent opinion. (*See* Tr. 505) ("Dr. Kennedy's opinion has been considered for supportability, consistency, relationship, and specialty within his assessment."). Indeed, that State agency psychological consultant concluded, similar to the ALJ, that "[t]he medical source statement in [Dr. Kennedy's] report concerning [Miller's] abilities in the areas of making personal and social adjustment are not consistent with all of the medical and non-medical evidence in the claims folder and are viewed as an overestimate." (Tr. 507). Thus, the ALJ's reliance on the State agency psychological consultant's administrative medical finding also supports the ALJ's conclusion that Dr. Kennedy's opinion was unpersuasive. *See* 20 C.F.R. § 404.1520c(c)(2) ("The

more consistent a medical opinion(s) . . . is with evidence from other medical sources[,] . . . the more persuasive the medical opinion(s) . . . will be.").

Relatedly, Miller takes aim at the ALJ's failure to consider additional factors in analyzing Dr. Kennedy's opinion. Specifically, Miller argues that because "the ALJ had found the administrative finding on reconsideration to also be persuasive, this should have triggered the ALJ to proceed to step two of the § 404.1520c analysis and consider the 'most persuasive other factors' such as medical specialty, actual examination of the claimant, familiarity with SSA's disability programs and disability evaluation in general[.]" (ECF No. 15 at 10). By Miller's telling, the "ALJ's failure to do so . . . requires remand for further proceedings." (*Id.*). But Miller's argument appears to rest on a false premise.

The "other factors" Miller refers to are found in 20 C.F.R. § 404.1520c(c)(3)–(c)(5). Section 404.1520c states that ALJs "may, but are not required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this section . . . when [they] articulate how [they] consider medical opinions and prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b)(2). The only scenario in which § 404.1520c requires consideration of these factors is when the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" *Id.* § 404.1520c(b)(3).

Here, however, the ALJ made no such finding. On the issue of Miller's mental RFC, the ALJ found one prior administrative medical finding more persuasive than the other, and then found that Dr. Orr and Dr. Kennedy's opinions were unpersuasive for different reasons. (Tr. 351). Nowhere, in this context, did the ALJ find that two or more opinions or administrative findings

were "equally well-supported" but "not exactly the same[.]" 20 C.F.R. § 404.1520c(b)(3). The ALJ was therefore under no duty to consider the "other factors" to which Miller points. Instead, the ALJ was only required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings[.]" *Id.* § 404.1520c(b)(2). And, as the Court previously explained, the ALJ did exactly that in weighing the medical evidence with respect to Miller's mental RFC.

Accordingly, for the foregoing reasons, the Court concludes that because the ALJ provided a basis for finding Dr. Kennedy's opinion unpersuasive that was rooted in contrary record evidence and based upon supportability and consistency, the ALJ's finding was legally sufficient and supported by substantial evidence. *See Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 808 (3d Cir. 2018) ("[T]he ALJ could properly discount the opinions of physicians whose opinions were inconsistent with . . . other substantial evidence in [the claimant's] case record.") (internal quotation omitted); *Bielat v. Kijakazi*, No. 20-349-E, 2022 WL 571938, at *1 n.3 (W.D. Pa. Feb. 24, 2022) (explaining that the "ALJ's observation of inconsistency—which he supported with references to the other parts of the record—constitutes an adequate explanation" for rejecting a medical opinion).[4]

---

[4] Also, to the extent Miller argues that the ALJ's rejection of Dr. Kennedy's opinion was improper because the ALJ failed to discuss his reasoning in enough detail, (*See* ECF No. 15 at 9) (arguing that the "ALJ never acknowledged or discussed the fact that Dr. Kennedy had reviewed [] additional records"), the Court notes that "'in most cases, a sentence or [a] short paragraph' will 'probably suffice' to support an ALJ's decision." *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 807 (3d Cir. 2018) (quoting *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)). As outlined above, the ALJ dedicated a paragraph toward explaining why he found Dr. Kennedy's opinion unpersuasive. (Tr. 351–52). Because the Court finds that "the ALJ provided sufficient reasons for the weight given to the evidence from each" medical opinion and administrative medical finding, as explained in text, Miller's argument to the contrary fails. *Id.*; *see also id.* n.7 (resting the conclusion that "the ALJ provided sufficient reasons" on the fact that the ALJ's opinion explained that a medical opinion was "not supported by the record").

### ii. The ALJ's Evaluation of the Mental Impairment Evidence Generally Is Supported by Substantial Evidence

Turning to Miller's broader assertion that the ALJ's RFC determination is "not supported by substantial evidence" because the ALJ "fail[ed] to properly evaluate the mental impairment evidence generally[,]" (ECF No. 15 at 1), the Court is satisfied that the ALJ's conclusion was "'accompanied by a clear and satisfactory explication of the basis on which [his RFC determination] rests." *Melchionna*, 2022 WL 822127 at *4 (quoting *Cotter*, 642 F.2d at 704).

The ALJ discussed, in detail, the objective findings and treatment history regarding Miller's alleged mental symptoms and limitations. (Tr. 348–49). This included discussion of Dr. Kennedy's finding that Miller "was pleasant and cooperative with adequate manner of relating, social skills, and overall presentation." (Tr. 348). The ALJ also discussed the fact that on examination in December 2019, Miller "made good eye contact[,] exhibited normal speech and logical and goal-directed thoughts[,]" had "adequate attention and concentration[,]" and was "pleasant and cooperative." (Tr. 349). And the ALJ noted that Miller "reported that she has difficulty being around people due to anxiety but she did not report that it had any effect on her ability to get along with others[,] including authority figures." (Tr. 344).

Moreover, the ALJ noted that Miller's treatment history showed that Miller, in December 2019, reported that she was "doing 'okay' overall and that her medications were helpful in controlling depression and anxiety symptoms despite some bad days here and there[.]" (*Id.*). And the ALJ explained that Miller had "not reported any specific lasting social interaction issues in the course of seeking treatment." (*Id.*). Accordingly, the ALJ concluded that "the objective

findings show no lasting or significant objective mental deficits[,]" and he therefore included no social limitations in Miller's RFC save her restriction to following simple instructions. (*Id.*). Finally, the ALJ was sure to explain "that any allegations consistent with the overall evidence are fully accounted for in the mental limitations reflected in the residual functional capacity[.]" (*Id.*).

This analysis, in conjunction with the ALJ's consideration of the additional medical opinions and administrative medical findings detailed above, leads the Court to conclude that the ALJ's RFC determination—including its reflection of Miller's mental impairments—was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co.*, 205 U.S. at 229. The ALJ did not "reject evidence for no reason or for the wrong reason"; instead, he properly concluded that the social limitations opined by Dr. Kennedy were "contradicted by other evidence in the record" and therefore uncredible. *Rutherford*, 399 F.3d at 554.

Put differently, the Court concludes that the ALJ's findings regarding Miller's mental impairments and subsequent RFC determination are supported by substantial evidence. Although reliance on Dr. Kennedy's opinion may have led to a different RFC determination, that fact does not alter the Court's conclusion.[5] *See Simmons v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) ("While there is other evidence in the record that could support a [contrary] finding . . ., [the Court's] inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, [the Court] must review whether the ALJ's actual findings are supported by substantial record evidence."); *Beatty v. Kijakazi*, No. 21-12-J, 2022 WL 1642391, at *1 n.3 (W.D. Pa.

---

[5] Moreover, because the Court concludes that the ALJ's RFC determination is supported by substantial evidence, Miller's argument that the vocational expert's testimony was "based on a defective (i.e., inaccurate) RFC finding" also fails. (ECF No. 15 at 4).

May 24, 2022) (explaining that although "certain evidence might have been marshaled to support alternative conclusions," the ALJ's decision to include only a simple instructions limitation in the plaintiff's RFC was supported by substantial evidence where the ALJ "rendered a clear account of the evidence probative of Plaintiff's mental impairments and associated limitations").

### iii. The ALJ's Overarching Conclusion that Miller Was Not Disabled During the Relevant Time Period is Supported by Substantial Evidence

With the validity of the ALJ's RFC determination established, the Court turns briefly to the ALJ's overall conclusion that Miller was not disabled from January 31, 2019, through the date of the ALJ's decision. Although Miller's arguments center around the ALJ's mental RFC determination, it is worth noting why the ALJ's overall conclusion was likewise sound.

Because the ALJ concluded that Miller's "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations[,]" and in order to "determine the extent to which these limitations erode the unskilled light occupational base," the ALJ "asked [a] vocational expert whether jobs exist in the national economy for an individual with [Miller's] age, education, work experience, and [RFC]."[6] (Tr. 353); *see also* SSR 83-12, 1983 WL 31253, at *2–3 (Jan. 1, 1983) (explaining that vocational expert assistance and testimony is advised in such situations).

The vocational expert answered that question in the affirmative and outlined three representative occupations an individual with Miller's capabilities would be able to perform. (Tr.

---

[6] The Court notes that an offshoot of Miller's argument that her RFC "fails to account for all [her] mental limitations" is that it "requires additional vocational testimony to assess the impact of her social limitations on her ability to perform other work[,]" presumably upon remand. (ECF No. 15 at 3). That argument, however, is refuted by the Court's conclusion that the ALJ's RFC determination and, as explained in text, overall disability finding based on the vocational expert's testimony, were supported by substantial evidence.

353). This led to the ALJ's conclusion that Miller "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[,]" and therefore was not "disabled" as defined in the Social Security Act during the relevant time period. (*Id.*). This analysis, which comports with the applicable Agency regulations, supports the conclusion that the ALJ's overarching disability determination was supported by substantial evidence. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999) (explaining that where the "hypothetical" posed by the ALJ to the vocational expert "encompasses all the limitations which the ALJ found were suffered by the claimant[,]" testimony that there are jobs available which the claimant can perform "can be relied upon as substantial evidence supporting the ALJ's conclusion that [the claimant] is not totally disabled"); *Ubaldini v. Comm'r of Soc. Sec.*, No. 22-2686, 2023 WL 7001840, at *4 (3d Cir. Oct. 24, 2023) ("Because the ALJ relied upon a hypothetical that accurately reflected his finding regarding the extent of [the claimant's] limitations, the vocational expert's testimony in response—that work was available—constituted substantial evidence to support the ALJ's non-disability determination.").

    **IV.**    **Conclusion**

Based on the foregoing, the Court finds that the Commissioner's decision should be affirmed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA ANN MARIE MILLER, | ) | Case No. 3:21-cv-111 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 28th day of November, 2023, upon consideration of Plaintiff's Motion for Summary Judgment, (ECF No. 14), and Defendant's Motion for Summary Judgment, (ECF No. 21), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is **GRANTED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**